```
                  UNITED STATES DISTRICT COURT
                   MIDDLE DISTRICT OF FLORIDA
                      FORT MYERS DIVISION

CHARLES MCMILLAN,

               Plaintiff,

vs.                                  Case No.   2:04-cv-141-FtM-99DNF

DON HUNTER, RALPH CENTALONZA, BETH
ANN HANSEN, DR. DAVID BROWN, LINDA
SUSAN CORICA, KIM SMITH, PATRICIA
WILLIAMS, MARIE FRANCOIS, ROBBIE
MUDER, BONNIE MACKENZIE, DONNA
FIALA, PRISON HEALTH SERVICES, GREG
SMITH, VICKY WOLLING, NAPLES JAIL
CENTER,

               Defendants.
_____
```

**OPINION AND ORDER**

This matter comes before the Court upon review of Defendant Prison Health Services ("PHS") Motion for Summary Judgment (Doc. #60) with attached exhibits, including the depositions of Dr. Roger Browne (chief health officer at Everglades Correctional Institution) (Doc. #53), Dr. Carl Balmir (doctor from Everglades Correctional Institution) (Doc. #54), and Plaintiff McMillan (Doc. #55). Additionally, Defendant attaches an expert report prepared by Dr. Margaret Koziel (doctor located in Boston, Massachusetts, with speciality in infectious disease) (Doc. #56) and Plaintiff's Collier County Jail medical records (Docs. #57 Volume I, Doc. #58 Volume II, Doc. #59 Volume III). In response to the Defendant's Motion, Plaintiff filed his Affidavit (Doc. #63) on June 6, 2006, and a Response (Doc. #71) on October 20, 2006. On January 19,

2007, the Court granted Plaintiff's Motion permitting him a thirty (30) day extension of time to retain counsel; however, the Court noted that if counsel did not enter an appearance within the allotted time, Plaintiff shall be prepared to continue to proceed in this action *pro se*. (Doc. #81.)  Counsel has not entered an appearance on behalf of Plaintiff.  This matter is now ripe for review.

## I.

On March 8, 2004, Plaintiff, who was at the time incarcerated at Everglades Correctional Institution and represented by counsel, filed a civil rights Complaint (Doc. #1) pursuant to 42 U.S.C. § 1983.[1]  On December 19, 2005, Plaintiff's counsel filed an unopposed motion for Plaintiff's counsel to withdraw as the attorney of record.  (Doc. #49.)  The Court granted the Motion.  (Doc. #52.)  Since January 9, 2006, Plaintiff has been proceeding *pro se* in this action.

The incident giving rise to the Complaint occurred while Plaintiff was a pre-trial detainee at the Collier County Jail.[2] The Complaint alleges that Plaintiff's Eighth Amendment rights were violated due to the Defendants' lack of medical attention to

---

[1] According to the address listed on the docket history, it appears that Plaintiff is no longer incarcerated.

[2] Both Plaintiff and Defendant calls the Collier County Jail the "Naples Jail Center."  The Court will refer to the "Naples Jail Center" as the Collier County Jail.

Plaintiff's human immunodeficiency virus ("HIV"). Specifically, the Complaint alleges that in spite of Plaintiff's requests and grievances, Defendants periodically failed to provide Plaintiff with his HIV medication and other times provided Plaintiff with the incorrect doses of medication, or the medication at the wrong time. Pl's Complaint ¶¶ 13, 16, 20 (March 8, 2004).[3]  As a result, Plaintiff believes that he has lost years from his life expectancy. Aff. Pl. McMillan.  The Complaint also alleges that in retaliation for filing a grievance regarding the "poor food service," the jail's food services department stopped serving Plaintiff his evening sandwich, which he needed to take with the HIV medicine. Pl's Complaint ¶ 23.  Plaintiff became ill whenever he took his HIV medication without food.  Id. ¶ 25.  Additionally, the Complaint claims that PHS "provided misinformation about [Plaintiff's] viral load count and HIV status."  Id. ¶¶ 11, 24.

The Complaint named the following Defendants: Don Hunter (Collier County Sheriff), Ralph Centalonza (Captain), Beth Ann Hansen (Sergeant), Dr. David Brown (doctor from PHS), Linda Susan Corica (Food Services Department), Kim Smith (nurse from Prison Health Services), Patricia Williams, Marie Francois (Supervisor), Robbie Muder (Supervisor of Nursing), Bonnie Mackenzie (position unknown), Donna Fiala (County Commissioner), Greg Smith (Captain),

---

[3]For citation purposes, the pinpoint citations are those that appear scanned at the top of the page, according to the Court's CM/ECF program.

-3-

Vicky Wolling (position unknown), Naples Jail Center, and PHS (Medical Contractor for the Naples Jail Center).

On May 11, 2005, the parties filed a Joint Stipulation of dismissal with prejudice, acknowledging that PHS has a "contractual duty to indemnify and defend" the Sheriff of Collier County. (Doc. #43.) Upon consideration of the joint stipulation, the Court dismissed all the Defendants with prejudice, except PHS. See Order dated September 12, 2005, Doc. #44. On April 7, 2006, Defendant PHS filed the Motion for Summary Judgment *sub judice*.

## II.

Summary judgment is appropriate only when the Court is satisfied that "there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). An issue is "genuine" if there is sufficient evidence such that a reasonable jury could return a verdict for either party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A fact is "material" if it may affect the outcome of the suit under governing law. Id. The moving party bears the burden of identifying those portions of the pleadings, depositions, answers to interrogatories, admissions, and/or affidavits which it believes demonstrate the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986); Hickson Corp. v. Northern Crossarm Co., Inc., 357 F.3d 1256, 1259-60 (11th Cir. 2004).

To avoid the entry of summary judgment, a party faced with a properly supported summary judgment motion must come forward with extrinsic evidence, i.e., affidavits, depositions, answers to interrogatories, and/or admissions, which are sufficient to establish the existence of the essential elements to that party's case, and the elements on which that party will bear the burden of proof at trial. Celotex Corp., 477 U.S. at 322; Hilburn v. Murata Elecs. N. Am., Inc., 181 F.3d 1220, 1225 (11th Cir. 1999). In ruling on a motion for summary judgment, if there is a conflict in the evidence, the non-moving party's evidence is to be believed and all reasonable inferences must be drawn in favor of the non-moving party. Shotz v. City of Plantation, 344 F.3d 1161, 1164 (11th Cir. 2003). In the summary judgment context, the Court must construe *pro se* pleadings more liberally than those of a party represented by an attorney. Loren v. Sasser, 309 F.3d 1296, 1301 (11th Cir. 2002).

Defendant PHS raises the following grounds in the Motion for Summary Judgment: (1) Plaintiff failed to exhaust his available administrative remedies; (2) the record does not support Plaintiff's constitutional claim; and (3) the record does not show a PHS policy or practice causing injury. Additionally, Defendant PHS argues that the state negligence action cannot be maintained due to Plaintiff's failure to comply with state pre-suit requirements.

**III.**

Title 42 U.S.C. § 1983 imposes liability on anyone who, under color of state law, deprives a person "of any rights, privileges, or immunities secured by the Constitution and laws." To state a claim under 42 U.S.C. § 1983, Plaintiff must allege: (1) Defendants deprived him of a right secured under the United States Constitution or federal law, and (2) such deprivation occurred under color of state law. Arrington v. Cobb County, 139 F.3d 865, 872 (11th Cir. 1998); U.S. Steel, LLC v. Tieco, Inc., 261 F.3d 1275, 1288 (11th Cir. 2001). In addition, Plaintiff must allege and establish an affirmative causal connection between the defendant's conduct and the constitutional deprivation. Marsh, 268 F.3d at 1059; Swint v. City of Wadley, 51 F.3d 988 (11th Cir. 1995); Tittle v. Jefferson County Comm'n, 10 F.3d 1535, 1541 n.1 (11th Cir. 1994). A defendant who occupies a supervisory position may not be held liable under a theory of *respondeat superior* in a § 1983 action. Monell v. Dep't of Soc. Serv., 436 U.S. 658, 690-692 (1978); Quinn v. Monroe County, 330 F.3d 1320, 1325 (11th Cir. 2003); Farrow v. West, 320 F.3d 1235 (11th Cir. 2003).

"Deliberate indifference to [the] serious medical needs of [a] prisoner [ ] constitutes the unnecessary and wanton infliction of pain . . . proscribed by the Eighth Amendment."[4] Farrow v. West,

---

[4]At the time Plaintiff filed his Complaint, Plaintiff was a pre-trial detainee at the Collier County Jail. Thus, Plaintiff's rights arise from the Fourteenth Amendment, but the case law
(continued...)

320 F.3d 1235, 1243 (11th Cir. 2003)(quoting Estelle v. Gamble, 429 U.S. 97 (1976)); Campbell v. Sikes, 169 F.3d 1353 (11th Cir. 1999). Medical treatment violates the Eighth Amendment only when it is so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness. Harris v. Thigpen, 941 F.2d 1495, 1505 (11th Cir. 1991). To establish his Eighth Amendment claim, a plaintiff must prove both an objective and a subjective component. Farrow, 320 F.3d at 1243. To establish an objectively serious deprivation of medical care, a prisoner must establish: (1) an objectively serious medical need, and (2) that the response made to the need was poor enough to constitute an unnecessary and wanton infliction of pain, and not merely accidental inadequacy, negligence in diagnosis or treatment, or medical malpractice. Taylor v. Adams, 221 F.3d 1254, 1258 (11th Cir. 2000).

A "serious medical need" is one that has been diagnosed by a physician as mandating treatment or one that is so obvious that

---

⁴(...continued)
developed with regard to the Eighth Amendment prohibitions against cruel and unusual punishment is analogous. Cook *ex. rel.* Estate of Tessier v. Sheriff of Monroe County, Fla., 402 F.3d 1092, 1115 (11th Cir. 1985); See also Hamm v. DeKalb County, 774 F.2d 1567 (11th Cir. 1985) (noting that "In regard to providing pretrial detainees with such basic necessities as food, living space, and medical care, the minimum standard allowed by the due process clause is the same as that allowed by the Eighth Amendment for convicted persons.").

even a lay person would easily recognize the necessity for a doctor's attention, and, in either case, must be one that if left unattended poses a substantial risk of serious harm. Kelley v. Hicks, 400 F.3d 1282, 1284 n.3 (11th Cir. 2005); Brown, 387 F.3d at 1351; Farrow, 320 F.3d at 1243. The Eleventh Circuit has found that HIV constitutes a "serious medical need." Brown v. Johnson, 387 F.3d 1344, 1351 (11th Cir. 2004). Deliberate indifference to a prisoner's future health can constitute an Eighth Amendment violation. Kelley, 400 F.3d at 1284; Powell v. Lennon, 914 F.2d 1459, 1464 n.10 (11th Cir. 1990).

To show the required subjective intent, a plaintiff must prove defendant acted with "deliberate indifference" by showing: (1) subjective knowledge of a risk of serious harm (i.e., both awareness of facts from which the inference could be drawn that a substantial risk of serious harm exists and the actual drawing of the inference); (2) disregard of that risk; and (3) by conduct that is more than gross negligence. Bozeman v. Orum, 422 F.3d 1265, 1272 (11th Cir. 2005). Inadvertent negligent, or even gross negligent, failure to provide adequate medical care does not rise to a constitutional violation. Farrow, 320 F.3d at 1243.

Delay of treatment for serious conditions can rise to the level of deliberate indifference where it is apparent that delay would detrimentally exacerbate the medical problem, the delay does seriously exacerbate the medical problem, and the delay is medically unjustified. Taylor, 221 F.3d at 1259-60 (citing Hill v.

Dekalb Reg'l Youth Ct., 40 F.3d 1176, 1187 (11th Cir. 1994)); Lancaster, 116 F.3d at 1425. Whether the delay was tolerable depends on the nature of the medical need and the reason for the delay. Farrow, 320 F.3d at 1247. A constitutional claim can exist for delayed treatment of a condition that does not require immediate attention. Farrow, 320 F.3d at 1247. Plaintiff can show an Eighth Amendment violation, even if a cure is not possible, if certain treatments eliminate pain and suffering at least temporarily. Washington v. Dugger, 860 F.2d 1018, 1021 (11th Cir. 1988).

**IV.**

With regard to the Defendant's argument that Plaintiff did not exhaust his available administrative remedies, PHS did not include the Collier County Jail's administrative procedures as part of the record in this case. Instead, Defendant relies upon an Eleventh Circuit case, stating that a prisoner must appeal an adverse grievance ruling in order to exhaust his administrative remedies. Def's Mot. S.J. at 16-17. In support of this claim, Defendants attach a one-page excerpt from Plaintiff's deposition in which Plaintiff provides a vague response to Defendant's question concerning what steps Plaintiff took in the grievance process. Plaintiff responded that "there isn't an appeal process." Depo. Pl. McMillan at 2. The context in which the response is made is entirely unclear. The Court cannot decipher whether Plaintiff is referring to the steps he took to exhaust the administrative

grievance procedure at the Collier County Jail or some other institution; or, which grievance Plaintiff is referencing during this part of the deposition.[5]  In particular, the Complaint states that Plaintiff filed "approximately 50 grievance forms" related to this action.  Pl's Complaint ¶ 7.  The Court finds that Defendant PHS has not established that Plaintiff failed to comply with the administrative remedies available to him.  See Jones v. Bock, 549 U.S. __, Nos. 05-7058, 05-7142, slip op. at 14 (Jan. 22, 2007) (discussing in dicta that the Court refers to the jail's specific grievance procedures in order to determine whether a prisoner has exhausted his available administrative remedies by complying with the specifics of the jail's grievance procedures).  Consequently, the Court will deny Defendants' Motion as to the exhaustion issue.

As previously noted, the Eleventh Circuit has determined that HIV constitutes a "serious medical need."  Brown v. Johnson, 387 F.3d 1344, 1351 (11th Cir. 2004).  Thus, Plaintiff has demonstrated that he has a serious medical need.  The Court must next determine whether there is a genuine issue of material fact as to whether Defendant PHS exhibited deliberate indifference to Plaintiff's medical needs based upon the record before it.

When Plaintiff was transferred to the Collier County Jail on April 23, 2002, Plaintiff informed the jail of his HIV status and

---

[5]Although the exact date is not indicated on the deposition, the reporter typed the year 2004.  According to the record, in 2004, Plaintiff was no longer at the Collier County Jail.

of his HIV medications. Exh. County Jail Health Information Transfer Summary, Medical Records Vol. I at 42-45. The record establishes that the jail placed Plaintiff on an HIV treatment program known as the HAART regimen.[6] Depo. Dr. Browne at 3. Thus, PHS was aware of Plaintiff's HIV status and acknowledged Plaintiff's need for HIV medication.

Nevertheless, the record establishes that Plaintiff periodically was not administered doses of the HIV medication and at times was administered incomplete doses of the medication. Aff. Pl. McMillan, Def's Mot. S.J. at 13. In Brown, the Eleventh Circuit found that a complete withdrawal of treatment for Plaintiff's HIV constituted deliberate indifference. Brown, 387 F.3d at 1351. Here, the amount of HIV medicine that Plaintiff missed is in dispute. Plaintiff claims that there were over forty-five incidents where he either did not receive his HIV medication or did not receive the complete dose of medicine. Aff. Pl. McMillan. Plaintiff went nine days without being given any of his HIV medication and then a second time went six or seven days without any HIV medication. Pl's Complaint ¶¶ 18-19. Defendant PHS admits that Plaintiff missed thirty-nine doses of the medication, but suggests that the missed dosages is inconsequential

---

[6] The HAART regimen consists of the following medications: videx EC, zerit, invirase and norvir. Depo. Dr. Browne at 3. At the time of Plaintiff's incarceration, Plaintiff took the following HIV medications: ritonavir, saquinarvir (Fortovase), d4T (Zerit) and ddl (Videx). Expert Report of Dr. Koziel at 2.

since Plaintiff received over 5000 doses of HIV medications. Def's Mot. S.J. at 14.

The Court finds that there remain facts in dispute as to why Plaintiff missed doses of the HIV medication. Plaintiff avers that upon arrival at the jail, officials first informed Plaintiff that he was responsible for providing his own HIV medications, so Plaintiff's former fiancé brought his HIV medication to the jail. Aff. Pl. McMillan. Further, Plaintiff claims that the jail ran out of his HIV medication. Id. In a grievance dated August 7, 2002, Plaintiff complains that he did not receive all of his HIV medications. In response, the medical department states, "Your medications are here. Resolved." Pl's Complaint at 30. Defendant PHS, referring to notes in Plaintiff's medical records, argue that Plaintiff missed doses of his medication because Plaintiff was non-compliant and refused to take his HIV medication. Def's Mot. S.J. at 6.

Whether Plaintiff's sporadic taking of HIV medication impacted his health is also in dispute. In a grievance dated August 20, 2002, Plaintiff complains that he is "in a great deal of pain from my kidney's and my feet, ankles, chest and face [are] swollen." Pl's Complaint at 35. The next day, Plaintiff submitted a medical request to the jail requesting that the jail provide Plaintiff with certain tests for HIV associated illnesses that cause swelling and kidney failure. Id. at 37. Although PHS's response indicates that the tests were performed and the results were normal and in fact

revealed that Plaintiff's HIV blood values improved, Plaintiff contends that PHS mislead him as to his blood values. Id. This is consistent Dr. Browne's testimony that Plaintiff's viral load was 1,121, which was "somewhat excessive."[7] Depo. Dr. Browne at 5. Subsequent testing at Everglades in May 2003 indicated that Plaintiff's viral load count had decreased and was in fact undetectable after receiving the HAART medications at Everglades. Id. at 6. According to Dr. Balimer, sporadically missing doses of HIV medication "would probably cause emergence of some resistant strain . . ." Depo. Dr. Balmir at 16-17.

    Consequently, after reviewing the record, the Court finds issues of material fact remain at this stage of the proceedings that preclude the granting of summary judgment for Defendant PHS. With regard to Defendant's argument that the record is devoid of any evidence of a policy or custom created by PHS that caused Plaintiff constitutional injury, the Court finds that PHS' failure to provide Plaintiff with at least thirty-nine doses of HIV medication is sufficient enough for a jury to find PHS had a practice that resulted in Plaintiff's injury. See Monell, 436 U.S. at 690-691 (defining a custom as a practice that is settled and permanent that it takes on the force of law). To the extent any claims are not addressed herein, the Court deems them to be without merit.

---

    [7]Dr. Browne testified regarding Plaintiff's medical tests that were done upon his arrival at Everglades Correctional Institution.

ACCORDINGLY, it is hereby

**ORDERED**:

Defendant Prison Health Services' Motion for Summary Judgment (Doc. #60) is **DENIED**.

**DONE AND ORDERED** in Fort Myers, Florida, on this   20th   day of February, 2007.

_____
JOHN E. STEELE
United States District Judge

SA: alj
Copies: All Parties of Record